

FILED & ENTERED

JUL 27 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY evangeli   DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Jessika Andrea Barreto,<br><br><br><br><br><br><br>Debtor(s). | Case No.: 2:20-bk-11101-BB<br><br>CHAPTER 7<br><br>**MEMORANDUM DECISION GRANTING MOTION FOR DAMAGES FOR WILLFUL VIOLATION OF AUTOMATIC STAY AND CIVIL CONTEMPT/SANCTIONS FOR VIOLATION OF DISCHARGE INJUNCTION**<br><br>Date:        July 14, 2026<br>Time:        2:00 PM<br>Courtroom:  1539 |

The February 18, 2026 motion of debtor Jessika Andrea Barreto (the "Debtor") seeking damages for willful violation of the automatic stay under 11 U.S.C. § 362(k) and civil contempt sanctions for violation of the discharge injunction under 11 U.S.C. § 524(a)(2) (the "Motion") [Docket No. 32[1]] against former creditor Claudia Margarita Martinez ("Martinez") and her attorney Eamon Jafari ("Jafari") of Barrington Legal, Inc. (jointly, "Respondents") came on regularly for hearing before the above Court on March

---

[1] Unless otherwise noted, docket numbers provided herein refer to numbers on the docket in the main bankruptcy case and not in one of the related adversary proceedings.

-1-

18, 2026, May 5, 2026 and July 14, 2026.[2] After consideration of the pleadings, the evidence presented, the arguments of counsel the hearings, and the applicable law, the Court finds that the following facts are undisputed and issues the following conclusions of law.

## I.
## JURISDICTION

The Debtor commenced her chapter 7 bankruptcy case (the "Case") on January 31, 2020.  This Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. § 1409.

## II.
## FACTUAL BACKGROUND

**A. The 2016 Transfer**

1.  On June 4, 2015, a grant deed was recorded in the Los Angeles County Recorder's Office, conveying title to the real property located at 26787 Lugar De Oro Drive, Santa Clarita, California (the "Property") to Debtor.

2.  On January 5, 2016, Martinez obtained a civil judgment against Debtor in the amount of $209,476.46 (the "Judgment").

3.  On March 24, 2016, the Debtor recorded a Grant Deed transferring the Property to Grettel Ballesteros ("Ballesteros").

4.  On January 13, 2020, Martinez recorded an Abstract of Judgment in the Los Angeles County Recorder's Office (Instrument No. 20200044394).  As the Debtor did not own the Property as of that date, recordation of this abstract did not create a

---

[2] The Debtor also filed adversary proceeding no. 2:25-01390-BB against Respondents on November 21, 2025, seeking similar relief (the "Debtor's Adversary Proceeding").  In light of the Court's ruling at the July 14, 2026, hearing on the Motion, the Debtor agreed on the record at a status conference held in that action on July 14, 2026, that there was no longer any reason for her to prosecute the Debtor's Adversary Proceeding and that it should be dismissed.  The Court will enter a separate order to that effect in the Debtor's Adversary Proceeding.

judgment lien in favor of Martinez against the Property. Respondents admitted on page 3[3] at lines 15-16 of the May 28, 2025 supplemental brief that Jafari filed on Martinez's behalf in Los Angeles Superior Court -- Exhibit "B" to Docket No. 46-2 ("Exhibit B") -- that Martinez did not obtain a lien against the Property by recording this abstract because the Debtor was not the record owner of the Property at the time of recording.

5. When the Debtor later filed bankruptcy on January 31, 2020, she did not schedule an interest in the Property. Although she shows the address of the Property as her residence, she expressly states on Schedule D: "(debtor claims NO legal or equitable interest in the subject property) (real property owned and paid for by Grettel Ballesteros)." [Emphasis in original.] Debtor did not disclose the transfer to Ballesteros on her Statement of Financial Affairs, but that did not make the statement inaccurate, as none of the questions that appear on this statement ask a debtor to disclose transfers made as far back as the transfer to Ballesteros.

6. The Debtor received her discharge on May 11, 2020, resulting in a discharge of the unsecured claim that Martinez asserted based on the Judgment. Respondents admitted on May 28, 2025, on page 3 at lines 16-18, of Exhibit B that "[Martinez was] classified as an unsecured creditor, and her judgment was discharged under 11 U.S.C. § 727 in May 2020." Exhibit B at p. 3, lines 16-18.

**B. The 2020 Adversary Proceeding**

1. On April 1, 2020, Barrington Legal, Inc., acting as counsel for Martinez, filed an adversary proceeding in this Court – Adversary Proceeding No. 2:20-ap-01078-BB (the "2020 Action"). The 2020 Action sought to avoid the Debtor's 2016 transfer of the Property to Ballesteros as a fraudulent transfer. The Court scheduled an initial status conference in the 2020 Action for June 9, 2020, at 2:00 p.m. Approximately two

---

[3] All page numbers given for Exhibit B in this memorandum refer to the page numbers at the top of the page that were assigned at the time the Debtor filed this document with the Bankruptcy Court and not to the internal page numbers of the original document.

days before the status conference, the Court posted its tentative ruling for that hearing[4], which read as follows:

> **PARTIES WISHING TO APPEAR MUST MAKE ARRANGEMENTS TO APPEAR TELEPHONICALLY BY:  (1) CONTACTING COURT CALL AT 866-582-6878 OR ONLINE; AND (2) SENDING AN EMAIL TO Chambers_SBluebond@cacb.uscourts.gov not later than 4 p.m. on the day prior to the hearing containing the information SET FORTH UNDER the telephonic INSTRUCTIONS TAB ON Judge Bluebond's page on the Court's website.**
>
> Assets that are not disclosed on the debtor's schedules are not abandoned when the trustee files his final report.  Once a bankruptcy is filed, fraudulent transfer claims become assets of the bankruptcy estate.  The plaintiff lacks standing to prosecute this action and has violated the automatic stay by filing it.  Dismiss action without prejudice.  If plaintiff would like to bring this action, she will need to enter into an agreement with the trustee pursuant to which the trustee abandons the action.  If the underlying bankruptcy case has been closed, plaintiff will need to reopen the case.

2.      The Court has reviewed its records and files and takes judicial notice of the fact that no one appeared at the June 9, 2020, status conference in the 2020 Action on behalf of either side.  As a result, the tentative ruling became the Court's final ruling, and the 2020 Action was dismissed.  The Court entered a written order of dismissal in the 2020 Action on June 10, 2020 [Docket No. 16 in the 2020 Action], which stated that, "[f]or the reasons set forth on the record at the time of the Hearing, **IT IS HEREBY ORDERED** that this adversary proceeding, case number 2:20-ap-01078-BB, is dismissed without prejudice."  The Bankruptcy Noticing Center served this order by email on June 10, 2020, on, among others, Claudia Margarita Martinez in care of Jafari at jafari@barringtonlegal.com. [Docket No. 17 in the 2020 Action].

3.      At the July 14, 2026, hearing on the Motion, Jafari represented to the Court orally (and not in any declaration filed under penalty of perjury in this matter) that he did not know what the Court had ruled at the June 9, 2020, hearing because Martinez had been represented by a different attorney at that time. This representation

---

[4] In the United States Bankruptcy Court for the Central District of California, interested parties can check judges' calendars on the Court's website and view any tentative rulings that the judges have posted there.

was false. Jafari's law firm -- Barrington Legal, Inc.—the same law firm appearing for Martinez in connection with the Motion -- filed the 2020 Action and represented Martinez throughout that proceeding.

4.      Counsel for Martinez must have read the Court's June 9, 2020, tentative ruling prior to the June 9 hearing. If counsel had not read the tentative, why didn't he attend the hearing?  His failure to appear demonstrates knowledge of the tentative ruling (which said that his appearance was not required) and a decision not to contest it. Even if Jafari had failed to read the tentative ruling before the hearing, he received the entered order dismissing the adversary proceeding.  Upon review of that document, would Jafari not inquire as to the reason for the dismissal? The only logical conclusion is that Jafari must have known the basis for the Court's dismissal of the 2020 Action either before or shortly after the dismissal occurred.

5.      But this conclusion need not be based on logic alone.  In the motion to reopen the Case that Barrington Legal filed with this Court on August 28, 2020 [Docket No. 14] -- signed by Jafari himself – Jafari included the following as part of his explanation for the need to have the Case reopened:

> 10.  On June 10, 2020 Creditor's action was dismissed without prejudice because Creditor erroneously filed the action against the Debtor instead of the Trustee over the bankruptcy estate. The courts [sic] tentative ruling in regard to the dismissal of the action read as follows:
>
> Assets that are not disclosed on the debtor's schedules are not abandoned when the trustee files his final report. Once a bankruptcy is filed, fraudulent transfer claims become assets of the bankruptcy estate. The plaintiff lacks standing to prosecute this action and has violated the automatic stay by filing it. Dismiss action without prejudice. If plaintiff would like to bring this action, she will need to enter into an agreement with the trustee pursuant to which the trustee abandons the action. If the underlying bankruptcy case has been closed, plaintiff will need to reopen the case.

Either Jafari has a shockingly poor memory of the relevant events, or he has no qualms whatsoever about lying to this Court.  Jafari knew full well why the 2020 Action was dismissed not later than August 28, 2020.

6.      The Court granted Martinez's motion to reopen by order entered October 23, 2020 [Docket No. 16].  Presumably, at some point thereafter, Jafari on behalf of Martinez entered into discussions with the chapter 7 trustee in the Case (the "Trustee") concerning the prospect of the Trustee's abandoning the fraudulent transfer action that Martinez hoped to pursue (the "Fraudulent Transfer Claim"), but, when no stipulation re abandonment or notice of the Trustee's intention to abandon either any interest the estate may have had in the Property or the Fraudulent Transfer Claim itself had been filed with the Court, the Court reclosed the Case approximately a year later on October 21, 2021.

7.      On June 25, 2024, Ballesteros recorded a grant deed (Instrument No. 20240413092) transferring the Property back to the Debtor and Jorge Alexander Munoz, as joint tenants.

**C. The State Court Action**

1.      On December 19, 2024, Martinez, again represented by Jafari, filed a first amended complaint (the "First Amended Complaint") against the Debtor, among others, in Los Angeles Superior Court case number 24CHCV04677 (the "State Court Action") [see Docket No. 1-4, Exhibit "D"]. The State Court Action sought to avoid the 2016 transfer and recover the Property or its value to satisfy Martinez's discharged unsecured claim.

2.      Respondents knew of the discharge. They knew that Martinez's claim was unsecured and had been discharged. They nonetheless commenced and prosecuted the State Court Action against the Debtor for the purpose of collecting upon a discharged debt.

3.      On December 19, 2025, in connection with the State Court Action, Respondents recorded a lis pendens against the Property.  This act was taken post-discharge and constitutes a further act intended to facilitate collection from the Debtor or her property of Martinez's discharged, unsecured claim.  Respondents knew of the Case and the discharge at the time the lis pendens was recorded.

-6-

4.   As the Court had explained in its June 9, 2020 tentative ruling – **and as Jafari recited in his August 2020 motion to reopen the case** – assets that are not scheduled by a Debtor are not abandoned when a bankruptcy case is closed. Unscheduled assets remain property of the bankruptcy estate and therefore remain protected by the automatic stay.  Martinez lacked standing to prosecute the Fraudulent Transfer Claim and was violating the automatic stay by doing so – and Respondents absolutely and unequivocally knew that.

5.   After Respondents failed to cease and desist in response to written demands from counsel for the Debtor, on April 9 and 10, 2025, the Debtor and the other defendants in the State Court Action (collectively, the "Defendants") filed and served a demurrer to the First Amended Complaint, seeking dismissal of various causes of action, and a motion to strike certain portions of Plaintiff's First Amended Complaint. On April 11, 2025, Defendants filed a motion to expunge the lis pendens.

6.   The Superior Court heard arguments on the motion to expunge the lis pendens on May 14, 2025, and ordered the parties to submit supplemental briefs addressing the status and effect of the bankruptcy proceedings. The parties filed those briefs on May 28, 2025.  The brief that Jafari filed on Martinez's behalf is the document identified above as Exhibit B.

7.   In Exhibit B, Respondents made the following arguments to the Superior Court:

a.   Respondents never sought relief from the Bankruptcy Court or permission from the Trustee to prosecute the fraudulent transfer claims, as no such relief was required because (1)  the Property was never part of the bankruptcy estate[5] and (2) both transfers occurred entirely outside the administration of the bankruptcy case;

[5] While it may be true that the Property itself was not an asset of the Debtor's bankruptcy estate, this argument is highly misleading in that the Fraudulent Transfer Claim that Respondents were attempting to prosecute *was* property of the Debtor's bankruptcy estate, and Jafari knew that.

b. Because the Debtor never scheduled the Property in her bankruptcy, it was never a part of her bankruptcy estate and was never subject to administration;

c. Because the Debtor was not the record owner of the Property at the time Martinez's abstract of judgment was recorded, Martinez never obtained a judgment lien against the Property;

d. Martinez's claims arise exclusively under state law, involve no property of the bankruptcy estate and assert no rights against the estate or its representative; and

e. The Bankruptcy Court lacks jurisdiction under section 1334(b), and no legal or procedural mechanism required Plaintiff to seek relief there once the Case was closed and the estate extinguished.

Exhibit B, p. 3, at lines 4-29.

8. Respondents had actual notice well before they filed Exhibit B in State Court that the arguments outlined in paragraph 7 directly contradicted applicable law.  The Bankruptcy Court had already ruled – and they were aware that the Bankruptcy Court had already ruled – that (1) a failure to schedule property has no bearing on whether or not that property becomes property of a debtor's bankruptcy estate; (2) unscheduled property remains property of the bankruptcy estate and therefore remains protected by the automatic stay even after a bankruptcy case is closed; (3) the Fraudulent Transfer Claim that Martinez sought to litigate was itself property of the Debtor's bankruptcy estate; (4) because the Trustee had not abandoned the Fraudulent Transfer Claim, Martinez lacked standing to prosecute it; (5) prosecution of that claim was a violation of the automatic stay; and (6) Respondents *did* have a duty to obtain approval of the bankruptcy court before attempting to prosecute the Fraudulent Transfer Claims.

9. The Superior Court held a hearing on the demurrer and motion to strike on September 8, 2025.  In reliance on Respondents' misrepresentations as to applicable law, outlined in paragraph 7 above, the Superior Court overruled the demurrer as to all

Defendants except Smart International Trading LLC; denied the motion to strike; ordered the Defendants to file an answer to the First Amended Complaint within 30 days; and denied the motion to expunge the lis pendens.

**D.      The Current Round of Proceedings in Bankruptcy Court**

10.  On October 10, 2025, the Debtor filed a motion to reopen the Case for the limited purpose of prosecuting an adversary proceeding against Respondents for violation of the automatic stay and the discharge injunction [Docket No. 20].  The Court granted that motion by order entered November 13, 2026 [Docket No. 27].

11.  On November 21, 2026, Debtor commenced adversary proceeding no. 2:25-ap-01390-BB (the "Debtor's Adversary Proceeding") against Respondents, seeking declaratory, injunctive, and monetary relief based on Respondents' violations of the automatic stay and discharge injunction [Docket No. 31 in the main Case].  On February 18, 2026, the Debtor filed the instant Motion [Docket No. 32] seeking damages from Respondents for willful violation of the automatic stay under Bankruptcy Code section 362(k) and seeking to have Respondents held in contempt and to have sanctions imposed upon them for violating the discharge injunction.

12.  At the March 18, 2026, hearing on the Motion, the Court reiterated its earlier ruling that the Fraudulent Transfer Claim remained an asset of the Debtor's bankruptcy estate (as it had not been abandoned by the Trustee), that Martinez lacked standing to prosecute this claim and that her actions in State Court constituted a violation of the automatic stay.  As Respondents continued to argue that it was permissible for them to prosecute a fraudulent transfer action against the Debtor and her property notwithstanding the discharge of Martinez's claim, the Court set a continued hearing and asked the parties to brief the following two legal issues in the interim:

> 1. Can a creditor whose claim was discharged bring a prepetition fraudulent transfer claim that became an asset of the bankruptcy estate after that fraudulent transfer claim was abandoned by the trustee[6] (i.e., is a creditor holding a

---

[6] By that point in time, based on representations made by Respondents, the Court believed that the Trustee was likely to abandon the Fraudulent Transfer Claims before the continued hearing.

discharged claim still a creditor for the purpose of prosecuting a fraudulent transfer claim after the discharge)?

2.  Assuming the following facts:
    a.  the debtor made a fraudulent transfer in 2016;
    b.  thereafter, the creditor records an abstract of judgment;
    c.  the abstract did not attach to the property because title was not in the debtor's name at the time;
    d.  after recordation, the debtor files bankruptcy (in January of 2020) and the case is closed in or about May of 2020;
    e.  the debtor never scheduled the property or the fraudulent transfer claim;
    f.  thereafter, the property is transferred back to the debtor (in 2024);
    g.  an automatic stay was in effect from the time the bankruptcy case was commenced until the trustee abandoned the fraudulent transfer claim (sometime in 2026); and
    h.  the creditor's state law fraudulent transfer action was not time-barred as of the time the bankruptcy case was filed.

In light of these assumed facts, is the creditor's state law fraudulent transfer claim barred by the statute of limitations or was the statute of limitations tolled from the time of the bankruptcy filing until the date of abandonment?

12.  The Court held a hearing on the issues outlined above on May 5, 2026 and, as set forth in more detail below, ruled that (a) an unsecured creditor whose claim is discharged in bankruptcy may not thereafter bring a fraudulent transfer action against the debtor to establish a lien (even if the claim has been abandoned by the Trustee) because the prosecution of such a claim would be merely an action to enforce an unsecured, discharged claim; and (b) although the applicable statute of limitations would be tolled during any period of time during which the creditor was precluded by the automatic stay from bringing a fraudulent transfer claim, such claims are nevertheless time-barred by Cal. Civ. Code § 3439.09(c) – California's 7-year statute of repose.

13.  In light of these rulings, the Court continued the hearing on the Motion to July 14, 2026, at 2:00 p.m., for a determination of the amount of attorneys' fees the Court should award to the Debtor as compensation for Respondents' willful violations of the automatic stay and discharge injunction.  The Court gave the Debtor to and including June 23, 2026, to file and serve a brief and supporting declaration setting forth

the amount of attorneys' fees attributable to Respondents' conduct.  Respondents had to and including June 30, 2026, to file and serve any objections that Martinez had to the amount of fees requested.  The Debtor had to and including July 7, 2026, to file and serve a response to Martinez's objection.

14.  On July 14, 2026, the Court found that the Debtor was entitled to an award of $55,217.15, representing the reasonable attorneys' fees that she had incurred as a proximate result of Respondents' violations of the automatic stay and discharge injunction through the date of the Trustee's abandonment of the Fraudulent Transfer Claim.[7]

**III.**

**CONCLUSIONS OF LAW**

**A. Violation of the Automatic Stay**

The filing of a bankruptcy petition operates as an automatic stay of, among other things, "any act to create, perfect, or enforce any lien against property of the estate." The stay also prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The automatic stay is applicable to all entities and arises by operation of law upon the filing of a bankruptcy petition.

Violations of the automatic stay have consequences. Actions taken in violation of the automatic stay are void under Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571-72 (9th Cir. 1992), and section 362(k) allows individual debtors to recover damages caused by violations of the automatic stay. See Koeberer v. Cal. Bank of Com. (In re Koeberer), 632 B.R. 680, 687 (9th Cir. BAP 2021).

---

[7] The Court selected this cutoff date because the automatic stay ceased to be an impediment to Respondents' prosecution of the claim after that date and Respondents did not appear to have taken any further actions in violation of the discharge injunction after that date (other than preparing and filing briefs at the request of this Court in connection with adjudication of the Motion).

As the Bankruptcy Appellate Panel explained in Albert-Sheridan v. State Bar (In re Albert-Sheridan), 658 B.R. 516, 533-534 (2024), to recover actual damages under § 362(k), the debtor must prove that the stay violation was willful.  To make this showing, the debtor must demonstrate that the defendant "knew of the automatic stay," and that, "its actions in violation of the stay were intentional." Stuart v. City of Scottsdale (In re Stuart), 632 B.R. 531, 538 (9th Cir. BAP 2021) (quoting Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1215 (9th Cir. 2002)), aff'd, 2023 U.S. App. LEXIS 20305, 2023 WL 5011739 (9th Cir. Aug. 7, 2023). However, the debtor need not prove that the defendant intended to violate the stay or that knew that its actions violated the automatic stay:  whether a party believes in good faith that it had a right to take the act in question is not relevant to whether the act was "willful" or whether compensation must be awarded.  Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir. 1992). "Not even a 'good faith' mistake of law or a 'legitimate dispute' as to legal rights relieve a willful violator of the consequences of his act." Ramirez v. Fuselier (In re Ramirez), 183 B.R. 583, 589 (1995) (quoting In re Sansone, 99 B.R. 981 (Bankr. C.D. Cal. 1989)), which was, in turn, quoting In re AM Int'l, Inc., 46 B.R. 566 (Bankr. M.Tenn. 1985).

Here, Respondents knew of the bankruptcy filing. They knew of the automatic stay. They nonetheless took deliberate actions in violation of the stay, including exercising control over an asset of the Debtor's bankruptcy estate – the Fraudulent Transfer Claim -- and recording a lis pendens in furtherance of that action.  These actions were intentional.  Even if Respondents had been subjectively unaware that prosecuting the Fraudulent Transfer Claim and recording the lis pendens constituted stay violations, this conduct would nevertheless be willful and sanctionable under section 362(k).  However, Respondents **were aware** that this conduct violated the automatic stay.  The Court expressly advised them this conduct violated the automatic stay in its June 9, 2020, ruling, and Respondents acknowledged that they knew this in their August 28, 2020 motion to reopen the Case [Docket No. 14].  Yet they falsely

represented to the State Court on May 28, 2025 in Exhibit B [on p. 6 at lines 20-23] that "the automatic stay terminated by operation of law upon discharge and case closure on **May 11, 2020** . . . . At that point, no bankruptcy-related restriction remained on Plaintiff's ability to pursue her independent creditor remedies under state law against the debtor and third-party transferees." On these facts, compensatory sanctions are not only warranted, they are mandatory. See Bankruptcy Code § 362(k)(1) ("an individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorneys' fees" [emphasis added]).

### B. Violation of the Discharge Injunction

A discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 542(a)(2). The discharge injunction survives the bankruptcy case and applies permanently with respect to every debt that is discharged. The purpose of the discharge injunction is to afford the debtor a fresh financial start. Upon discharge, a debtor is relieved of personal liability for discharged debts, and an unsecured creditor has no right to any of the debtor's property post-discharge to satisfy a discharged debt and cannot exercise any remedies that might otherwise be available to judgment creditors to enforce or collect upon an unsecured debt as against the debtor or the debtor's property.

To have a creditor held in contempt for violating the discharge injunction, the debtor must demonstrate not only the existence of the discharge and that the creditor was aware of the bankruptcy filing, but also that there is "no fair ground of doubt" as to whether the discharge barred the creditor's conduct, or, stated differently, that the creditor lacked any *objectively reasonable* basis to believe its post-discharge collection conduct was lawful. Taggart v. Lorenzen, 587 U.S. 554 (2019). Under the "fair ground of doubt standard," civil contempt may be appropriate when the creditor

violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." Id.

Martinez held a valid judgment lien only if the abstract of judgment attached to the Debtor's interest in the Property at the time of recording. Because the Debtor had already transferred the Property away before the abstract was recorded, Martinez obtained no lien and was an unsecured creditor. Her claim was discharged. Respondents expressly acknowledged this in pleadings filed in the State Court Action. At lines 14 through 18 of page 3 of Exhibit B, Respondents admitted that "Plaintiff had a 2018 civil judgment and had properly recorded an abstract in January 2020.  However, because Baretto [sic] was not the record owner at the time of recording, Plaintiff's lien could not attach.  She was therefore classified as an unsecured creditor, and her judgment was discharged under 11 U.S.C. § 727 in May 2020."  Respondents acknowledged further, at lines 3 through 6 of page 4 of Exhibit B, that Martinez did not hold an interest in property that survived the discharge at the time she filed the State Court Action and recorded the lis pendens:  she explained, "only by voiding both fraudulent transfers[8] can title be properly restored to Baretto [sic] as of the lien

---

[8] The two transfers to which Respondents refer are (1) the 2016 transfer of the Property from the Debtor to Ballesteros described above at II(A)(3) and (2) the transfer from Ballesteros back to the Debtor described above at II(B)(7).  As the Court explained at the July 14, 2026, hearing on the Motion, and as Jafari acknowledged on the record at that time, there was no reason for Martinez to avoid the transfer back to the Debtor.  Only the first transfer needed to be avoided for title to have remained in the Debtor at the time Martinez recorded her abstract of judgment. Perhaps Jafari's insistence as to the need to avoid the second transfer had something to do with his efforts to persuade the State Court that Martinez's claim was not barred by the applicable statute of limitations.  See paragraph 22 of the First Amended Complaint, "Plaintiff is informed and believes and, based thereon, alleges that the Fraudulent Transfers constitute a single, continuous fraudulent scheme and, therefore, tolled any applicable statute of limitations under the doctrine of continuous fraud. . . . The deliberate coordination and timing of the Fraudulent Transfers reflect an intent to conceal the fraudulent nature of the transactions, **justifying the tolling of the statute of limitations under the continuous fraud doctrine."** Docket No. 1-4, Exhbit "D", at p. 7, lines 14-20 (emphasis added).  It is hard to see on these facts how Respondents could successfully argue that any allegedly fraudulent scheme was concealed.  The Debtor's transfer of the Property to Ballesteros, by a publicly recorded deed which reflects that there was no consideration given for the transfer, given shortly after Martinez obtained a civil judgment against her, coupled with the unusual and unnecessary notations that the Debtor added to her bankruptcy schedules – "debtor claims NO legal or equitable interest in the subject real property," "real property owned and paid for by Grettel Ballesteros" – should have been enough to put Martinez on notice of the Debtor's allegedly fraudulent scheme.  (The expression from Shakespeare's play Hamlet, "The lady doth protest too much, methinks," comes to mind.)  And these facts were indeed enough to cause Martinez to believe that a fraud had occurred:  Respondents first sued to avoid the 2016 transfer to Ballesteros as a fraudulent transfer on April 1, 2020.  Respondents cannot

recording date, thereby allowing Plaintiff's lien to retroactively attach under Civil Code § 3439.07(a)(1) and rendering the property subject to lawful execution." In other words, Martinez did not already have an interest in the Property at that point in time. Only by avoiding the fraudulent transfer(s) would Martinez **obtain** an interest in property. Therefore, at the time Martinez commenced the State Court action, she held only a discharged unsecured claim and not a lien or an interest in property.

There can be no fair ground of doubt as to the fact that an attempt to obtain, "retroactively," a judgment lien against property of the debtor to secure the payment of a discharged debt is a violation of the discharge injunction. By bringing the State Court Action, Martinez was trying to proceed against the Debtor's property to enforce an unsecured claim, but the enforcement of an unsecured claim against the Debtor or her property is no longer permissible once that claim has been discharged. A creditor cannot transform an unsecured claim into an "in rem" right against property after that claim has been discharged.

On the record at the May 5, 2026, hearing on the Motion, the Court offered the following hypotheticals to illustrate this point:

1. Assume that an unsophisticated lender lent money to the debtor prepetition in reliance on a debtor's representation that a deed of trust had been recorded in favor of the lender, which representation was later found to be false and fraudulent. The debtor then filed bankruptcy and obtained a discharge. Would the lender be able to go back and sue the debtor in state court after discharge for fraud if the only remedy it was seeking was to impose a lien on the debtor's property? It seems obvious that the answer to this question is no.

2. Similarly, suppose there is an unsecured judgment creditor, whose claim is discharged in bankruptcy. Would that creditor be able to go

seriously argue that the Debtor's allegedly fraudulent scheme did not come to light until the Property was reconveyed to the Debtor more than 4 years later.

back and record a judgment lien after the discharge on the theory that it's only going after the property? Again, the answer seems pretty clear— no.

Is our fact pattern really any different from either of these scenarios?

A fraudulent transfer action is a remedy that state law makes available to assist creditors who seek to collect their debts.  However, once a debtor/transferor receives a discharge, all state law remedies for enforcement of discharged unsecured claims **as against the debtor/transferor** are barred even if they are only directed at the debtor's property. Bankruptcy Code section 524(e) provides as follows:  "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, **or the property of any other entity** for, such debt." (Emphasis added.)  A discharge may not affect the liability of a third-party to the creditor, but it **does** affect the liability of the property of the debtor for the payment of the creditor's claim, unless the creditor **already holds a lien** against the debtor's property. An existing, secured, properly-perfected, unavoidable prepetition lien survives a bankruptcy discharge; a potential lien that might have arisen if the debtor had not transferred away the subject property does not.  A creditor cannot proceed against the debtor's property after discharge to collect on a discharged debt unless the creditor already had a lien that was not avoided in the bankruptcy.  The creditor cannot proceed against **the debtor's property** in an effort to *establish* a lien.  That would be merely an attempt to collect upon a discharged claim.

It is true that a discharge does not affect the liability of a third party for an obligation.  This is why, for example, a creditor holding a discharged claim may still proceed against insurance proceeds, against a guarantor of the obligation or against a **transferee** of property fraudulently conveyed to him by a debtor.  And, but for any applicable statute of limitations problem, the Court assumes without deciding that it might also be appropriate for Martinez to sue Ballesteros for aiding and abetting a fraudulent transfer (if such a cause of action actually exists under California law) or for

having conspired with the Debtor to defraud her. But that is not what Respondents have attempted to do.  In fact, Martinez is not really trying to **a**void anything, in the sense of unwinding or reversing it.  The transfer has already been unwound – the Property has already been returned to the Debtor.  Martinez is trying to **void** the 2016 transfer – that is, to treat it as never having occurred in the first place -- so that Martinez can obtain the judgment lien that would have attached to the Property had the Debtor owned it at the time of recordation.  Respondents are suing the Debtor to **impose** a lien against the Debtor's Property based on a discharged claim.  This is not merely an action against a third party. The Debtor was named as one of the Defendants in the State Court Action; the Debtor is currently the owner of the Property; and the relief sought is the establishment of a lien against the Debtor's Property to secure the payment of Martinez's discharged claim.

Respondents knew that Martinez's claim was unsecured and discharged. Respondents knew that the discharge injunction prohibited actions against the Debtor to collect discharged debts. Respondents nevertheless commenced and prosecuted the State Court Action. This was a violation of the discharge injunction.  Respondents' filing and prosecution of the State Court Action, and recordation of the lis pendens, were improperly coercive. These actions placed the Debtor in the position of having to defend against a state court lawsuit and having a cloud on her Property -- all for the purpose of collecting a debt that the law had extinguished. This coercion is objectively improper. Thus, the Court finds by clear and convincing evidence that Respondents should be held in contempt for violating the discharge injunction.

The Court gave Respondents an opportunity between the March 18, 2026, and May 5, 2026, hearings on the Motion to submit a brief to support their contention that there was an objectively reasonable basis for their contention that commencement of the State Court Action and recordation of the lis pendens did not violate the discharge injunction.  Although they submitted a brief on this subject [Docket 35], Respondents submitted no authority whatsoever for the proposition that an unsecured creditor can

prosecute an action against a debtor who has received a discharge, on the theory that the debtor engaged in a fraudulent scheme to deprive the creditor of a lien to secure its claim.  The only authorities that Respondents cited in that brief stand for the unsurprising propositions that, after a discharge, creditors retain the right to enforce perfected security interests against prepetition collateral and the right to assert claims against third parties.  The fact that Respondents were able to bamboozle a state court judge into believing that the discharge injunction did not bar their conduct in this case – by making false representations as to applicable legal principles -- does not transform Respondents' unsustainable position into one as to which there was a fair ground of doubt.

**C. Judicial Estoppel**

Judicial estoppel is an equitable doctrine intended to protect the integrity of the judicial process and prevent the risk of inconsistent court determinations by prohibiting parties from deliberately changing positions according to the exigencies of the moment. New Hampshire v. Maine, 532 U.S. 742 (2001).  "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." Davis v. Wakelee, 156 U.S. 680, 689, 39 L. Ed. 578, 15 S. Ct. 555 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227, n. 8, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000); see also 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage

by pursuing an incompatible theory").  New Hampshire v. Maine, 532 U.S. 742, 749 (2001).

In an effort to persuade this Court that Respondents had not violated the discharge injunction, Jafari raised, for the first time at the May 5, 2026, hearing, a new legal theory that he had not raised in the brief that the Court requested on this issue [Docket No. 35] -- that Martinez obtained a valid judgment lien against the Property under California law, even though the abstract of judgment had been recorded after the Debtor transferred away legal title, because Martinez's lien had attached to the Debtor's retained equitable interest in the Property. Jafari represented to this Court at the May 5 hearing that Martinez had asserted this theory of recovery in the State Court Action in addition to the Fraudulent Transfer Claims.  This was a knowingly false representation.[9]

Respondents never asserted this theory in State Court. In fact, Jafari made exactly the opposite argument in Exhibit B.  In State Court, Respondents argued that Martinez did *not* hold a valid lien and needed to avoid two fraudulent transfers in order to obtain a lien.  And it was essential that the argument be framed in this manner.  Had Martinez argued that the Debtor retained an equitable interest in the Property at the time she filed bankruptcy, Martinez would have been forced to take the position that the Debtor's equitable interest in the Property became an asset of the Debtor's bankruptcy estate.  And that position would have completely undermined Respondents' argument that her state court claims had nothing whatsoever to do with the Debtor's bankruptcy and that she did not need to obtain relief from the Bankruptcy Court to pursue these claims.

The following is the argument that Respondents *actually made* in state court:

> As confirmed by the Ninth Circuit Bankruptcy Appellate Panel in *In re Fadel* (2013) 492 B.R. 1, property becomes part of the bankruptcy estate only if the debtor held a legal or equitable interest in it at the time of filing.  If the debtor had no such interest on the petition date – regardless of any prior ownership – the property does not enter the estate and remains outside the reach of the trustee.

---

[9] Counsel for Martinez acknowledged on the record at the July 14, 2026, hearing that he first thought of this argument while preparing for the May 5, 2026, hearing.

Here, Barreto had transferred legal title to the Property in 2016 – nearly four years **before** filing her Chapter 7 petition in January of 2020.  She did not schedule any interest in the Property, and there was no adjudication of any equitable claim.  Even assuming a potential equitable interest based on continued possession, that interest was never disclosed or administered and was never acted upon by the Trustee.  Thus, under *Fadel*, the Property – having been neither legally nor equitably owned by Barreto on the petition date – did not enter the bankruptcy estate and remained outside the scope of the Trustee's authority.

Exhibit B, p. 5 at lines 29-30 & p. 6 at lines 1-9.

The arguments that Respondents advanced in Exhibit B were essential to Martinez's position that the lis pendens should remain in place. The State Court denied the Debtor's request to expunge the lis pendens after crediting Martinez's argument that the Debtor retained no equitable interest in the Property at the time she filed bankruptcy and, therefore, that the Property never became Property of the Debtor's bankruptcy estate.  Respondents may not now reverse course in this Court and contend that Martinez already held a perfected judgment lien that survived discharge because the abstract attached to a retained equitable interest in the Property at the time it was recorded. This newly formulated position is irreconcilably inconsistent with the position that Martinez successfully advanced in State Court. Permitting her to assert precisely the opposite position here would allow her to manipulate the judicial process by arguing in State Court that no equitable interest remained and no lien existed unless the transfer was avoided, while arguing in this Court that an equitable interest did remain and that her judgment lien therefore was perfected and unaffected by discharge even without avoidance of any transfer.

It would be difficult to imagine a clearer example of a party taking one position in State Court to (successfully) persuade the State Court to rule in its favor and then trying to advance (belatedly) precisely the opposite position in bankruptcy court.  Respondents committed themselves to the legal positions set forth in Exhibit B, and the State Court relied on these arguments in ruling in Martinez' favor in connection with Defendants' demurrer and motions to strike and expunge.  It would be inequitable for Respondents

-20-

to change course at this point and argue a contrary position. These shifting theories and false representations demonstrate that Respondents are well aware that they were violating the discharge injunction and are attempting to manufacture justifications for their conduct after the fact. The Court therefore finds that Respondents are judicially estopped from asserting that Martinez holds a perfected judgment lien against the Debtor's equitable interest in the Property, which was not discharged in bankruptcy, to avoid the imposition of sanctions for violating the Debtor's discharge injunction.

**D. The Fraudulent Transfer Claim is Also Time-barred.** [10]

Following the March 18, 2026, hearing on the Motion, the Court requested briefs concerning the application of the statute of limitations to a set of assumed facts and ruled orally on these issues at the May 5, 2006, hearing.  Martinez argued that the 4-year statute of limitations period established by California's fraudulent transfer statute should be tolled during any period of time during which she was precluded by the automatic stay (or by the Trustee's exclusive standing) from bringing a fraudulent transfer action.  The Court agreed.

The Debtor argued that Martinez's fraudulent transfer action was time-barred because it had not been brought within the time limit established by Bankruptcy Code section 546.  The Court rejected this argument.[11]  It does not matter how long the *Trustee* would have had to bring a fraudulent transfer action in the bankruptcy case. Martinez was not stepping into the Trustee's shoes and relying on any section of the bankruptcy code in prosecuting her action.  She was attempting to exercise rights

---

[10] The Court recognizes that the fact that Martinez's claim is time-barred has no bearing on whether Respondents violated the automatic stay or the discharge injunction.  The Court merely includes this analysis to memorialize its May 5, 2026, oral rulings on this subject.

[11] The Court also rejected the Debtor's argument that Martinez lacked standing to prosecute the Fraudulent Transfer Claim after it had been abandoned by the Trustee because property that the Trustee does not administer is abandoned **to the debtor.**  Section 554 does provide that property **that the debtor has scheduled** that remains unadministered when the case is closed is abandoned to the debtor, but this is only because that property originally belonged to the debtor.  The Debtor/transferor never owned an interest in the Fraudulent Transfer Claim and therefore did not acquire the ability to prosecute that claim after abandonment.  When a bankruptcy estate abandons its interest in an asset, it does just that -- abandons its interest.  The estate's interest is extinguished, and ownership rights in that asset are determined under applicable nonbankruptcy law. Assets that the bankruptcy estate acquired by stepping into the debtor's shoes revert back to the debtor after abandonment.  Assets that the estate acquired by stepping into the shoes of a creditor revert to the creditor.

granted to creditors by state law, and state law therefore governs the timeliness of the action.

The timing problem for Martinez here is not the 4-year statute of limitations; it is the 7-year statute of repose – Cal. Civ. Code § 3439.09(c) – as to which no tolling or delayed discovery rule applies.  The transfer that Martinez needed to avoid in order to argue that recordation would have created a judgment lien occurred on March 24, 2016. Therefore, this 7-year period elapsed on March 24, 2023.  The State Court Action was filed on December 19, 2024, by which point the Fraudulent Transfer Claim was time-barred.[12]

There is caselaw in the Ninth Circuit for the proposition that section 546 of the Bankruptcy Code trumps Cal. Civ. Code § 3439.09(c) and permits a debtor in possession or a trustee in bankruptcy to prosecute a state law fraudulent transfer action more than 7 years after the transfer so long as the cause of action was viable at the time the bankruptcy case was filed (see, e.g., Rund v. Bank of Am. Corp. (In re EPD Inv. Co., LLC), 523 B.R. 680 (Bankr. 9th Cir. 2015)), but, once abandonment occurs, the Supremacy Clause (which forms the basis of this Ninth Circuit authority) no longer applies.  After abandonment, the creditor resumes prosecuting its own rights under applicable state law, and section 3439.09(c) applies and is not overridden by the Supremacy Clause.

Section 3439.09(c) very clearly provides that its time limit governs "notwith-standing any other law."  There is no tolling, equitable tolling, delayed discovery rule or any other excuse for not bringing a fraudulent transfer action under California law within 7 years after the transfer was made.  Therefore, even if the Court treats the State Court Action as a valid filing for statute of limitations purposes (disregarding the fact that Martinez lacked standing to prosecute the action at the time it was filed), this filing occurred more than 7 years after the transfer and is therefore untimely.

---

[12] Martinez brought the 2020 Action on April 1, 2020, but that action was dismissed as a violation of the automatic stay on June 10, 2020, and did not therefore preserve the viability of the cause of action.

**E. The Creditor's Available Remedy and Failure to Pursue It**

This Court is well aware that the end result of its analysis may be to enable a debtor who may have transferred property with the actual intent to hinder, delay or defraud a creditor to "get away with it."[13]  But this consequence flows solely from Martinez's failure to utilize the appropriate remedy for preventing this result and not from any inherent problem with the Court's analysis. Assuming the lien that Martinez hoped to obtain by recording an abstract of the Judgment would have had any value,[14] Martinez could have sought to recover that value by commencing a timely nondischargeability action under 11 U.S.C. §§ 523(a)(2)(A) and/or § 523(a)(6).[15]  For reasons that remain unclear, Martinez failed to do so.

Under § 523(a)(2)(A), a debt is excepted from discharge if it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." Under § 523(a)(6), a debt is excepted from discharge if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity." And we know from the Supreme Court's holding in Husky Int'l Electronics, Inc. v. Ritz, 578 U.S. 355 (2016), that the term "actual fraud" as used in the discharge exceptions of section 523 includes a fraudulent transfer made with the actual intent to hinder, delay or defraud.

The Court takes judicial notice of the fact that Martinez, in care of Barrington Legal, was listed as a creditor in the Debtor's schedules [Docket No. 1, at p. 23 of 56] and on the Debtor's Master Mailing List of Creditors [Docket No. 1, at p. 55] and that Martinez was served at the same address by the Bankruptcy Noticing Center with the

---

[13] To be clear, the Court has not considered, and makes no finding on, the issue of whether the Debtor actually made a fraudulent transfer.

[14] The record does not reflect the value of the Property at the time the Case was filed, the amount of any consensual liens against the Property and the amount of any homestead exemption the Debtor might have been able to assert. Therefore, it is unclear on this record whether and to what extent the Debtor would have been able to avoid any judgment lien that Martinez recorded against the Property and how much, if any, damage Martinez actually suffered as a proximate result of the alleged fraudulent transfer.

[15] In addition, if Respondents believed that the Debtor retained an equitable interest in the Property notwithstanding the 2016 transfer, they could have brought an action to bar the Debtor from receiving a discharge under 11 U.S.C. §§ 727(a)(2)(B) and/or (a)(4) based on the Debtor's failure to disclose the existence of this equitable interest (and her allegedly false affirmative statement that she retained no such interest) on her schedules.

Notice of Commencement of Case, which reflected that the deadline for filing nondischargeability actions was May 4, 2020 [Docket No. 6].  Martinez could have filed a nondischargeability complaint on or before May 4, 2020, alleging that the Debtor's 2016 transfer to Ballesteros was made with actual intent to hinder, delay or defraud and that, as a result, she was damaged in an amount equal to the value of the judgment lien that she would have obtained but for the alleged fraudulent transfer. If Martinez had brought and prevailed on such a claim, she would have retained a nondischargeable unsecured claim equal to that value, which claim she could have enforced after the Case was closed using any available state law enforcement mechanisms.

The creditor failed to avail herself of this remedy. Martinez did not file a timely nondischargeability action. Instead, she attempted to use state law collection procedures to enforce a discharged debt as against the Debtor's property.  The distinction is critical. An unsecured creditor whose claim has been discharged has no right to collect that claim from the Debtor or its property post-discharge, even if the Debtor engaged in fraudulent conduct that caused harm to the creditor. The remedy for such harm is a section 523 nondischargeability action brought by the applicable deadline. Once that deadline passes without the creditor's having filed such an action, the debt is discharged, and the creditor may not use state law collection procedures against the Debtor or her property to circumvent the discharge.  The fraudulent transfer remedy under state law is a collection tool. Using it to collect a discharged debt from the Debtor or her property violates the discharge injunction, and attempting to do so before the Fraudulent Transfer Claim was abandoned by the Trustee also violated the automatic stay.

**E. Damages and Sanctions**

**1. Legal Framework for Damages**

Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may

recover punitive damages." The language of § 362(k) mandates the award of actual damages, including attorneys' fees, for willful violations.

For violations of the discharge injunction, the Court may invoke its authority under 11 U.S.C. § 105(a) to enforce the discharge injunction and order damages if the circumstances so require. Section 105(a) provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Court may also enforce the discharge injunction through civil contempt and may impose compensatory sanctions where the applicable contempt standard is satisfied.  Taggart, supra.  See also In re Breul, 533 B.R. 782 (Bankr. C.D. Cal. 2015).

**2. Award of Attorneys' Fees**

The Debtor has incurred substantial attorneys' fees in defending against the State Court Action and in prosecuting this Motion. The Debtor has submitted evidence of reasonable attorneys' fees in the amount of $55,217.15 incurred through April 21, 2026, the date on which the Trustee abandoned the Fraudulent Transfer Claim.

The Court set a deadline for Martinez to file any objections that she may have to the amount of fees requested. Jafari filed a brief by that deadline. At the July 14, 2026, hearing, however, Jafari attempted to raise an argument that he never raised in that brief -- that some of the charges on the fee statements provided by Debtor's counsel for services rendered in the State Court Action relate to services rendered on behalf of other clients that Debtor's attorneys were representing in the State Court Action.  Jafari and counsel for the Debtor disagreed on the record at the July 14 hearing as to which other parties Debtor's counsel had been representing at the time and the extent to which any material amount of services were performed on behalf of a client other than the Debtor.

As Jafari had not raised this argument in the brief that he filed on Martinez's behalf by the deadline the Court had established for briefing on this

subject, Martinez did not provide any evidentiary support for support her contentions, and Debtor's counsel had no meaningful opportunity to provide evidence to refute these contentions.  The Court therefore treated this argument as having been waived.

The Court finds that attorneys' fees in the amount of $55,217.15 were proximately caused by Respondents' willful violations of the automatic stay and the discharge injunction and that these amounts represent reasonable compensation for the services that were actually and necessarily incurred in response to these violations. Respondents forced the Debtor to incur these fees by commencing and prosecuting an action barred by both the discharge injunction and, prior to the Trustee's abandonment of the Fraudulent Transfer Claim, the automatic stay.

### 3. Joint and Several Liability

The Court further finds that Martinez and Barrington Legal should be held jointly and severally liable for these damages. Barrington Legal was not an innocent intermediary. The firm filed the State Court Action. The firm made false representations to both the State Court and to this Court. The firm knew of the bankruptcy case and discharge and chose to prosecute collection litigation against the Debtor anyway. An attorney who knowingly participates in willful violations of the automatic stay and the discharge injunction may be held liable for sanctions.

### 4. Punitive Damages

Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Relevant factors include: "(1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." Punitive damages generally require egregious, intentional misconduct.

Here, the conduct was egregious. Respondents knew of both the automatic stay and the discharge. Yet they prosecuted the State Court Action in knowing violation of both.  They made false representations both to the State Court and to this Court. They ignored this Court's 2020 ruling. This conduct was deliberate, intentional, and in bad faith.

Martinez's motive was to collect a discharged debt from the Debtor by means of a fraudulent transfer action and lis pendens, notwithstanding the Debtor's discharge and the automatic stay, and by any means possible, including by violating federal bankruptcy law and misleading two courts.  There was no provocation by the Debtor. The Debtor exercised her legal right to file bankruptcy and obtain a discharge.  However, the Court concludes that the award of $55,217.15 in attorneys' fees is itself a substantial sanction and declines to award or recommend punitive damages at this time, but reserves the right to do so if Respondents fail to comply with the orders set forth below.

## IV.

## CONCLUSION AND ORDER

The Court finds that creditor Claudia Margarita Torres and her attorneys Barrington Legal, Inc. knowingly and willfully violated both the automatic stay under 11 U.S.C. § 362 and the discharge injunction under 11 U.S.C. § 524(a)(2). The Court finds further that Martinez is judicially estopped from arguing that the recordation of an abstract of judgment created a lien against the Debtor's equitable interest in the Property at the time of recordation that was not discharged in bankruptcy. Martinez took the opposite position in State Court, and prevailed on that position when the State Court denied the Debtor's request to expunge the lis pendens.  She may not now assert an inconsistent position to avoid the consequences of the discharge.

In light of the foregoing, the Court imposes sanctions jointly and severally upon Martinez and Barrington Legal, Inc. in the amount of $55,217.15, representing the Debtor's reasonable attorneys' fees incurred through April 21, 2026.

**IT IS THEREFORE ORDERED:**

1. Claudia Margarita Torres and Barrington Legal, Inc., jointly and severally, shall pay the Debtor, in care of her counsel, the sum of $55,217.15 within thirty (30) days after the date of entry of this order.

2. Claudia Margarita Torres and Barrington Legal, Inc. shall immediately dismiss the State Court Action, Los Angeles Superior Court case no. 24CHCV04677, with prejudice, as against the Debtor.

3. Claudia Margarita Torres and Barrington Legal, Inc. shall immediately withdraw and expunge the lis pendens recorded against the Property located at 26787 Lugar De Oro Drive, Santa Clarita, California.

4. Within fourteen (14) days after the date of this order, Claudia Margarita Torres and Barrington Legal, Inc. shall file with this Court proof of compliance with paragraphs 2 and 3 above, which shall include filed and entered copies of the dismissal and evidence of the withdrawal and expungement of the lis pendens.

5. The Court retains jurisdiction to enforce this order and to impose or recommend additional sanctions, including punitive damages, in the event of noncompliance.

6. Concurrently herewith, the Court will enter an order dismissing the Debtor's Adversary Proceeding, Adv. No. 2:25-01390-BB, with prejudice.

**IT IS SO ORDERED.**

### #

Date: July 27, 2026

Sheri Bluebond
United States Bankruptcy Judge